IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

ZAIDA TORRES-VAZQUEZ

    Plaintiff,

v.

DORAL BANK OF PUERTO RICO         Civil No. 09-1702(SEC)

    Defendant.

**OPINION and ORDER**

Before the Court are defendant Doral Bank of Puerto Rico's ("Doral") motion for summary judgment (Docket # 54), and plaintiff Zaida Torres-Vazquez's opposition thereto (Docket # 61). After reviewing the filings and the applicable law, Doral's motion is **GRANTED**.

**Procedural Background**

Torres-Vazquez, a former employee at Doral, filed this suit under the Uniformed Services Employment and Reemployment Rights Act of 1994 ("USERRA"), 38 U.S.C. § 4311 et seq., the Puerto Rico Military Code, P.R. Laws Ann. tit. 25§ 2001 et. seq. and Act No. 80 of May 30, 1976 as amended, P.R. Laws Ann. tit. 29 § 185a et. seq. Docket # 9. She claims that Doral discriminated against her due to her membership in the Puerto Rico National Guard, and, in the alternative, that Doral dismissed her without cause. Id. Doral moved timely for summary judgment, arguing that (i) Torres-Vazquez provided no evidence to support her discrimination claim; and (ii) her dismissal was justified by repeated, documented, long-lasting violations of Doral's policies and operational procedures. Docket # 54. Torres-Vazquez opposed summary judgment, arguing, in essence, that genuine issues of fact exist about the circumstances surrounding her dismissal. Docket # 61.

**Civil No. 09-1702(SEC)**                                                                                                Page 2

**Standard of Review**

The Court may grant a motion for summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Ramirez Rodriguez v. Boehringer Ingelheim, 425 F.3d 67, 77 (1st Cir. 2005).  In reaching such a determination, the Court may not weigh the evidence.  See Casas Office Machs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668 (1st Cir. 1994).  At this stage, the court examines the record in the "light most favorable to the nonmovant," and indulges all "reasonable inferences in that party's favor." Maldonado-Denis v. Castillo-Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994).

Once the movant has averred that there is an absence of evidence to support the nonmoving party's case, the burden shifts to the nonmovant to establish the existence of at least one fact at issue that is both genuine and material.  See Garside v. Osco Drug, Inc., 895 F.2d 46, 48 (1st Cir. 1990) (citations omitted).  "A factual issue is 'genuine' if 'it may reasonably be resolved in favor of either party and, therefore, requires the finder of fact to make 'a choice between the parties' differing versions of the truth at trial.'" DePoutout v. Raffaelly, 424 F.3d 112, 116 (1st Cir. 2005) (quoting Garside, 895 F.2d at 48 (1st Cir. 1990)).

In order to defeat summary judgment, the opposing party may not rest on conclusory allegations, improbable inferences, and unsupported speculation. See Hadfield v. McDonough, 407 F.3d 11, 15 (1st Cir. 2005) (citing Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990).  Nor will "effusive rhetoric" and "optimistic surmise" suffice to establish a genuine issue of material fact.  See Cadle Co. v. Hayes, 116 F.3d 957, 960 (1st Cir. 1997). Once the party moving for summary judgment has established an absence of material facts in dispute, and that he or she is entitled to judgment as a matter of law, the "party opposing

**Civil No. 09-1702(SEC)**                                                                                           Page 3

summary judgment must present definite, competent evidence to rebut the motion." Méndez-Laboy v. Abbot Lab., 424 F.3d 35, 37 (1st Cir. 2005) (quoting Maldonado-Denis v. Castillo Rodríguez, 23 F.3d 576, 581 (1st Cir. 1994). "The non-movant must 'produce specific facts, in suitable evidentiary form' sufficient to limn a trial-worthy issue.... Failure to do so allows the summary judgment engine to operate at full throttle." Id.; see also Kelly v. United States, 924 F.2d 355, 358 (1st Cir. 1991) (warning that "the decision to sit idly by and allow the summary judgment proponent to configure the record is likely to prove fraught with consequence."); Medina-Muñoz, 896 F.2d at 8, quoting Mack v. Great Atl. & Pac. Tea Co., 871 F.2d 179, 181 (1st Cir. 1989) (holding that "[t]he evidence illustrating the factual controversy cannot be conjectural or problematic; it must have substance in the sense that it limns differing versions of the truth which a factfinder must resolve.").

**Material, Uncontested Facts**[1]

*Torres-Vazquez's Employment at Doral and Doral's Policies and Procedures*

On July 13, 2003, Doral hired Torres-Vazquez as a Customer Service Representative At Large. Doral's Statement of Uncontested Facts ("SUF"), Docket # 54-2, ¶ 2; Torres-Vazquez's Opposition to Statement of Uncontested Facts ("OSUF"), Docket # 61, ¶ 2. Doral knew at the time that Torres-Vazquez was a reservist in the Puerto Rico National Guard. Id. As Doral's Customer Service Representative, Torres-Vazquez had to open client accounts, process loan applications, make mortgage referrals, make ATM replacements, and provide general customer assistance. Id. ¶ 3. These responsibilities had to be carried in accordance with Doral's policies

---

[1] Under Local Rule 56(c), if a nonmoving party includes any additional facts when opposing a motion for summary judgment, such facts must be in a separate section, set forth in separate numbered paragraphs, and supported by a specific record citation. The First Circuit has repeatedly held that when the parties ignore the Local Rules, they do so at their peril. See Ruiz-Rivera v. Riley, 209 F. 3d 24, 28 (1st Cir. 2000). The Court has therefore disregarded all additional facts Torres-Vazquez provided without supporting record citations. For expediency and clarity, however, the Court will refrain from pointing out each instance of noncompliance by Torres-Vazquez; what follows are the facts the parties properly supported.

**Civil No. 09-1702(SEC)** Page 4

and procedures as well as local and federal regulations. Id. For this reason, Torres-Vazquez's first two weeks at Doral were exclusively dedicated to a full-time training, covering her essential duties and Doral's policies and procedures. Id. ¶ 5. Doral also provided Torres-Vazquez with a copy of its Employee Manual, which was kept updated and available for review at Doral's branches. Id. ¶ 6.

In 2005, Doral reclassified Torres-Vazquez's position to that of Customer Service Assistant Manager at Las Catalinas Branch. Id. ¶ 7. In this position, among other things, Torres-Vazquez was responsible for quality control in the customer service area, a task that required her to verify the accuracy of the accounts customer service personnel opened at the branch. Id.

In 2007, Doral eliminated the Customer Service Assistant Manager position and created the Personal Banker position. Id. ¶ 8. As a result, Torres-Vazquez's duties went back to those performed at the beginning of her employment at Doral, but her salary remained the same. Id. At the time, Torres-Vazquez was compensated on an hourly basis and could receive incentives if she met certain goals, including opening and processing accounts correctly, without exceeding the 3% margin of error Doral's policies and procedures mandated. Id. ¶ 9.

Doral's policies and procedures also required the Branch Manager or the Assistant Branch Manager to verify the accuracy of all the files Personal Bankers created. Id. ¶ 10. This entailed making sure that the files contained all required documents, signatures, and no blank spaces, as well as that accounts be opened in accordance with Doral's procedures. Id. The Branch Manager was also responsible for (i) preparing a monthly "checklist" (a pre-established form) to document all the errors found in audited files; (ii) notifying Personal Bankers about their errors; (iii) requesting and monitoring the correction of such errors; and (iv) taking applicable disciplinary measures. Id. ¶ 11.

Torres-Vazquez was aware of Doral's policies and procedures. Id. ¶ 12. In fact, she knew that Personal Bankers who violated the 3% margin of error rule could be penalized in accordance with Doral's Rules of Conduct. Id. Torres-Vazquez also knew that performing her

duties and responsibilities negligently or deviating from Doral's procedures could result in a written warning or suspension for the first offense; a written warning or suspension the second time; and dismissal if there was a third violation. Id. ¶ 13.

*The 2007 Investigation and Fines Against Doral*

In 2007, Doral was investigated and fined for, among other things, failing to complete mortgage and loan documents accurately. Id. ¶ 15. Doral's operations experienced many changes thereafter. Id. ¶ 16. For instance, Torres-Vazquez noticed that Doral's management became stringent in enforcing Doral's rules and policies about the proper handling of client accounts and loans. Id. Doral also offered, and Torres-Vazquez participated in, a series of trainings on the proper way to document loan applications. Id.

*Torres-Vazquez's Disciplinary Record*

On February 3, 2006, Torres-Vazquez received a disciplinary memorandum for violating Doral's e-mail policy by sending a personal chain message entitled "if you eliminate this you do not deserve to live." Id. ¶ 18. Then, on August 8, 2007, Doral's Branch Manager at Las Catalinas, Anmeris Curcio, verbally reprimanded Torres-Vazquez for errors found in loan documents she had prepared in May, June and July of that year. Id. ¶ 19. Curcio also advised Torres-Vazquez to (i) have another employee revise her loan documents before the client left the premises; and (ii) lower her voice to avoid third parties from overhearing situations concerning the client being assisted. Id.

A few months later, on October 31, 2007, Curcio again verbally admonished Torres-Vazquez, this time because she failed to account for receipts of files sent to central offices and because files Torres-Vazquez created could not be found. Id. ¶ 21. Torres-Vazquez acknowledges that it was her responsibility to prepare receipts of all files she prepared and sent to central offices. Id. Also, Torres-Vazquez admits that, as a result of this incident, she had to call the clients to reconstruct the lost files. Id.

**Civil No. 09-1702(SEC)**                                                                                                     Page 6

Less than a month later, Curcio again admonished Torres-Vazquez, now she had left two cases with client account documentation open overnight. Id. ¶ 22. Regarding this incident, Torres-Vazquez explains that she left the cases open overnight because she could not fit all the documents into the cases. Id.

On March 14, 2008, Torres-Vazquez received a written reprimand. Id. ¶ 23. On that occasion, she deviated from Doral's policies by authorizing payment via telephone on a $7,020.00 cash check, which she admits exceeded the margin of authority Doral had granted her. Id. A second written reprimand followed three months later—an audit of the accounts Torres-Vazquez had opened in May revealed an 11.61% margin of error. Id. ¶ 24. At this point, Curcio provided Torres-Vazquez with a checklist containing the errors and warned her that further deviations from Doral's procedures or policies could cause her dismissal. Id.

On February 2, 2009, Torres-Vazquez received a third and final warning. Id. ¶ 27. Again, an audit of accounts she had opened revealed that more than 3% were defective. Id. As in previous occasions, Curcio provided Torres-Vazquez with a checklist itemizing the errors and urged her to correct them. Id. Curcio also admonished Torres-Vazquez because between December 2008 and January 2009 she had been late to work on at least six occasions. Id. ¶ 28. Moreover, Curcio appraised Torres-Vazquez that further deviations from Doral's policies and procedures would result in disciplinary actions, including the possibility of dismissal. Id.

*Torres-Vazquez's Termination*

On February 17, 2009, Curcio notified her supervisor, Doral's Regional Manager, that accounts Torres-Vazquez had opened in 2009 violated Doral's 3% margin of error rule. Id. ¶ 29. On March 9, 2009, on her own initiative, Curcio placed Torres-Vazquez in a Performance Improvement Program. Id. ¶ 30. Curcio also advised Torres-Vazquez that she needed to improve the quality of her work with regard to managing client accounts and disbursements, that she had to notify denied request for loans immediately, and that she needed to minimize absences and tardiness. Id. In fact, Torres-Vazquez acknowledges that Curcio placed her in the

**Civil No. 09-1702(SEC)**                                                                                          Page 7

Performance Improvement Plan due to repeated instances of non-compliance with Doral's 3% margin of error rule. Id. ¶ 31.

Doral terminated Torres-Vazquez's employment on March 11, 2009. Id. ¶ 32. When informed about her termination, Torres-Vazquez asked Curcio about the date in which the decision had been made, and Curcio responded "I just found out." Id. ¶ 33. Torres-Vazquez recognizes that Doral dismissed her for repeatedly violating Doral's 3% margin of error rule. Id. ¶ 35. Indeed, days before her dismissal, Curcio had provided Torres-Vazquez with a checklist of mistakes made in 2009. Id. ¶ 36.

As Branch Manager, Curcio lacked authority to decide on Torres-Vazquez's termination; her role was limited to notifying supervisors about Torres-Vazquez's performance. Id. ¶ 37. Curcio's supervisor and Doral's Human Resources Manager were the ones who decided to terminate Torres-Vazquez. Id. In making this decision, they considered the following criteria: (i) that Torres-Vazquez had been given ample opportunity to improve her performance; (ii) that Torres-Vazquez's deviations from Doral's policies and procedures were serious, as they could affect Doral's assets and expose it to adverse findings in internal or external audits; and (iii) that despite the fact that Torres-Vazquez was a seasoned Personal Banker with extensive training and experience, she had been unable to perform in accordance with Doral's policies and procedures. Id. ¶ 38.[2]

*Torres-Vazquez's Discrimination Allegations*

Torres-Vazquez supports her military discrimination claim arguing that in 2006 and 2007, Doral pressured her to take military drills during the weekends that she was entitled to be off, and to take her annual military leave during her vacation time. Id. ¶ 43.[3] Doral's payroll

---

[2] On June 10, 2009, Doral dismissed another Personal Banker for the same reasons. Id. ¶ 41. Pursuant to Doral's records, that Personal Banker was not affiliated to the military. Id. ¶ 42.

[3] Torres-Vazquez's membership in the National Guard required participation in a monthly weekend drill and a two-week long training during the summers. SUF, ¶ 43, n. 5.

records, however, reveal that during 2006, Torres-Vazquez enjoyed vacations on the following dates: April 7; May 17; May 22 to May 26; and November 22 to December 1. Id. ¶ 45. Also in 2006, Torres-Vazquez went on a military leave from May 29 to June 12, and on a maternity leave from September 27 to November 21. Id. As to 2007, Doral's payroll records also show that Torres-Vazquez enjoyed vacations from August 31 to September 14. Id. ¶ 47. She also went on military leave from November 28 until December 13 of that year. Id.

As another example of discrimination, Torres-Vazquez claims that during 2007, Curcio sent her an e-mail inquiring whether she could schedule weekend drills every other month instead of every month. Id. ¶ 52. Torres-Vazquez told Curcio that said arrangement was impossible and continued attending drills every month. Id. Similarly, Torres-Vazquez states that she felt discriminated in 2007 because Curcio sent an e-mail to all Personal Bankers at the Catalinas Branch stating that due to Torres-Vazquez's drills, they would have no weekends off from November 28 to December 13, 2007. Id.

Despite her discrimination allegations, Torres-Vazquez never missed or failed to complete a military drill or training during her six-year tenure at Doral. Id. ¶ 53. Furthermore, in 2008, Torres-Vazquez enrolled in the University of Puerto Rico and took prerequisite courses to begin a graduate program. Id. ¶ 54. At the time, Doral adjusted Torres-Vazquez's work schedule, allowing her to leave early to attend classes on Mondays, Wednesdays and Fridays. Id.

**Applicable Law and Analysis**

*Torres-Vazquez's USERRA claim*

As stated above, Torres-Vazquez's federal law claim is based on USERRA, which prohibits an employer from denying employment benefits to a member of the armed services because of his or her military obligations. 38 U.S.C. § 4311(a). In pertinent part, USERRA establishes that

**Civil No. 09-1702(SEC)**                                                                                             Page 9

> (a) A person who is a member of, applies to be a member of, performs, has performed, applies to perform, or has an obligation to perform services in a uniformed service shall not be denied initial employment, reemployment, retention in employment, promotion or any benefit of employment by an employer on the basis of that membership, application for membership, performance of service, application for service or obligation.
>
> …
>
> (c) An employer shall be considered to have engaged in actions prohibited–(1) under subsection (a), if the person's membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action, unless the employer can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service....

38 U.S.C. § 4311.

USERRA was enacted in response to the Supreme Court's decision in Monroe v. Standard Oil Co., 452 U.S. 549, 567 (1981), where the Court held that USERRA's antecedent, the Vietnam Era Veteran's Readjustment Act of 1974, "was enacted for the significant but limited purpose of protecting the employee-reservist against discrimination … motivated solely by reserve status." Under the 1974 Act, liability could not be found unless the employee's reservist status was the sole motivation for the discriminatory conduct. Id. The 1994 enactment broadened this rule by providing that a violation occurs when a person's military status is a "motivating factor" in the discriminatory action, even if not the sole factor. Sheehan v. Dept. of the Navy, 240 F. 3d 1009, 1112-13 (Fed. Cir. 2001).

An employee making a discrimination claim under USERRA bears the initial burden of showing by a preponderance of the evidence that his military service was a "substantial or motivating factor" in the adverse employment action. Id. Discriminatory motivation under USERRA may be reasonably inferred from a variety of factors, including (i) proximity in time between the employee's military activity and the adverse employment action, (ii) inconsistencies between the proffered reasons and other actions of the employer, (iii) an employer's expressed hostility toward members protected by the statute together with

**Civil No. 09-1702(SEC)** <u>Page 10</u>

knowledge of the employee's military activity, and (iv) disparate treatment of certain employees compared to other employees with similar work records or offenses. Id. If the employee establishes that his or her military status was a motivating factor in the employer's decision, USERRA then shifts the burden of proof to the employer, allowing the employer to avoid liability if it "can prove that the action would have been taken in the absence of" the employee's military status. 38 U.S.C.A. § 4311(c)(1); see also Sheehan, 240 F.3d at 1013; Gummo v. Village of Depew, N.Y., 75 F.3d 98, 105-06 (2d Cir. 1996).

In this case, Doral has satisfied its initial burden under the summary judgment framework and showed that Torres-Vazquez's USERRA claim is not supported by proper evidence. See Garside, 895 F.2d at 48. Specifically, Torres-Vazquez has failed to point out to the Court any of the factors which generally indicate an USERRA violation. First, Torres-Vazquez has failed to show temporal proximity between her military activities and her dismissal from Doral. To the contrary, the record shows that Doral hired Torres-Vazquez despite knowing about her military affiliation, that Torres-Vazquez worked at Doral for almost six years, and that she actively participated in the military during this period. Moreover, Torres-Vazquez admits that Doral never interfered with her military duties and that she was able to complete all military drills and trainings while at Doral.

Second, Torres-Vazquez has failed to show discrepancies between the proffered reasons behind her dismissal and Doral's other actions. The opposite again holds true. The record shows that Doral was consistent in its relationship with Torres-Vazquez, giving her many opportunities to address work-related deficiencies and providing constant feedback on her performance.

Third, the record is devoid of evidence indicating Doral's hostility toward members of the armed forces or evidence of disparate treatment among Torres-Vazquez and her fellow employees. The record does show, however, that Doral was unusually flexible with Torres-Vazquez. For example, in 2006 alone, Torres-Vazquez enjoyed almost four months off work

**Civil No. 09-1702(SEC)**                                                                                                         Page 11

between vacations and other types of leaves. And in 2008, despite her lackluster job performance, when Torres-Vazquez needed an accommodation to further her education, Doral obliged, allowing adjustments to her work schedule three times a week. Furthermore, Doral has evinced the dismissal of another Personal Banker for the same reasons that prompted Torres-Vazquez's.

Torres-Vazquez alleges that the two e-mail messages Curcio sent in 2007 constituted discrimination under USERRA. These e-mails, however, fall far short of being the type of adverse employment action USERRA proscribes. See Vega-Colon v. Wyeth Pharmaceuticals, 625 F.3d 22, 33 (1st Cir. 2010) (defining the term "adverse employment action" under USERRA as an action "that significantly alters the terms and conditions of the employee's job.") (citation omitted). In this regard, the record contains no evidence showing that Curcio's emails had any implications on Torres-Vazquez's employment or on her military obligations, which Torres-Vazquez continued to fulfill after the messages. By the same token, there is no temporal proximity between the e-mails and Torres-Vazquez's termination almost a year and a half later. Lastly, the e-mails' content is non-discriminatory. See Rosario-Rivera v. Puerto Rico Aqueduct and Sewers Authority, 331 F.3d 183, 189-190 (1st Cir. 2003) (holding that discriminatory remarks must not be "merely tinged" with remarks abhorrent to a protected class, but they must actually constitute, in either character or substance, discrimination because of the class protected status). As stated above, the first e-mail inquires as to the possibility of restructuring Torres-Vazquez's military commitments, and the second informed Torres-Vazquez's co-workers about the reasons behind scheduling decisions Curcio made.

In any event, assuming *arguendo* that Curcio's e-mails were not entirely neutral with regard to Torres-Vazquez's military obligations, the comments Curcio made in those e-mails were "stray workplace remarks" insufficient to establish an USERRA cause of action. See Velazquez-García v. Horizon Lines of P.R., Inc., 473 F.3d 11, 18 (1st Cir. 2007) (citations omitted) ("[S]tray workplace remarks . . . normally are insufficient, standing alone, to establish

**Civil No. 09-1702(SEC)**                                                                                 Page 12

. . . the requisite discriminatory animus."); see also Ayala-Gerena v. Bristol Myers-Squibb Co., 95 F.3d 86, 96 (1st Cir.1996); Speen v. Crown Clothing Corp., 102 F.3d 625, 636 (1st Cir. 1996).[4] Here, other than Curcio's two emails, Torres-Vazquez has provided the Court with no other evidence to allow an inference of discriminatory animus by Doral, and the many accommodations Doral granted Torres-Vazquez weighs heavily against such an inference.

Having Doral successfully carried its initial burden for summary judgment purposes, the applicable burden-shifting scheme required Torres-Vazquez to show the existence of at least one fact at issue that is both genuine and material. See Garside, 895 F.2d at 48. Torres-Vazquez has put forward no such issue. The Court's inquiry therefore ends here;[5] Doral's summary judgment motion is **GRANTED** as to Torres-Vazquez's USERRA claim.

*Torres-Vazquez's Supplemental State Law Claims*

After dismissing Torres-Vazquez's federal law claim against Doral, the Court must also dismiss her state law claims. See Newman v. Burgin, 930 F.2d 955, 963 (1st Cir. 1991) (holding that "[t]he power of a federal court to hear and to determine state-law claims in non-diversity cases depends upon the presence of at least one 'substantial' federal claim in the lawsuit."). Accordingly, Torres-Vazquez's state law claims are **DISMISSED without prejudice**.

---

[4] In Velázquez-García, the First Circuit pointed out that standards for showing discriminatory animus under other anti-discrimination statutes, such as Title VII, can be applied equally to showings of discriminatory animus under USERRA. Id. at n. 7. The Court therefore discusses the "stray remark" doctrine using case law applicable to other anti-discrimination statutes.

[5] The Court notes, however, that Torres-Vazquez's disciplinary record at Doral provided ample nondiscriminatory reasons to terminate her employment, which would also constitute grounds to deny her USERRA claim. 38 U.S.C.A. § 4311(c)(1); see also Sheehan, 240 F.3d at 1013; Gummo, 75 F.3d at 105-06.

**Civil No. 09-1702(SEC)** Page 13

**Conclusion**

For the foregoing reasons, the Court **GRANTS** Doral's summary judgment motion, **DISMISSES** Torres-Vazquez's USERRA claim **with prejudice**, and her state law claims **without prejudice**.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 29th day of April, 2011.

                                         s/ *Salvador E. Casellas*
                                         SALVADOR E. CASELLAS
                                         U.S. Senior District Judge